In the Matter of L & M REALTY COR-
PORATION, Bankrupt.
No. 16727.

United States District Court
E. D. Virginia, Norfolk Division.
April 15, 1957.

**532**

Goldblatt & Lipkin, Paul M. Lipkin, Norfolk, Va., for petitioner.

Norris E. Halpern, Norfolk, Va., for bankrupt.

HOFFMAN, District Judge.

The pertinent question involved on this petition for review is whether the estate of one of two dominant stockholders in a "close" corporation is a creditor within the meaning of the Bankruptcy Act to such an extent as to permit the filing of an involuntary petition in bankruptcy, where said stockholder, during his lifetime, made loans to the corporation in relatively equal amounts with the other dominant stockholder.

This matter is before this Court a second time. On the former review this Court, affirming the action of the Referee

in Bankruptcy in dismissing the petition, held that certain banking institutions to whom payments had been made within four months prior to the filing of the involuntary petition were not creditors of the same class, and that said payments did not constitute a preference under the purview of 11 U.S.C.A. § 96, sub. a(1). In re L & M Realty Corporation, D.C., 131 F.Supp. 57. The United States Court of Appeals for the Fourth Circuit reversed and remanded, with Circuit Judge Soper dissenting. Leo v. L & M Realty Corporation, 4 Cir., 228 F.2d 89, certiorari was denied, 350 U.S. 969, 76 S.Ct. 438, 100 L.Ed. 841.

On remand the cause again came before the Referee for a determination of the other defenses raised by the alleged bankrupt. The Referee correctly disposed of the Sixth, Eighth and Tenth Defenses [1] by summarily stating:

"The other contentions of the Corporation advanced on this review are without enough substance to merit comment, except to state the conclusion that the apparent lack of proof to avoid the very preferences which are here held acts of bankruptcy does not afford any basis for refusing the adjudication. To hold otherwise would render meaningless the distinction between a preference as an act of bankruptcy and a preference which can be avoided. The difficulties of administering the estate after adjudication are bridges which must be crossed or faced only when reached."

The Third and Ninth Defenses assert, in substance, that the two stockholders, Leo (now deceased) and Myers,

1. The Sixth Defense alleges that petitioner is estopped to assert a preference in that she sought to obtain a preference for herself by instituting an action against the now alleged bankrupt in a state court to obtain a judgment for advances made by decedent during his lifetime. No judgment was taken by petitioner. Clearly, there is no merit to this position advanced by the alleged bankrupt.

The Eighth Defense contends that, at

the time one of the notes was paid to the Seaboard Citizens National Bank, the corporate balance in said bank was sufficient to pay the indebtedness, and the bank had the right of offset. Such a defense may be valid in any claim asserted by the Trustee against the bank, but it in no sense eliminates the bank as a creditor for the purpose of an involuntary proceeding.

The Tenth Defense is discussed in the final paragraph of this memorandum.

agreed that the advances made from time to time would be equal and, if unequal, that the same should be adjusted as promptly as possible; that said advances were in reality nothing more than capital investments; and that the alleged bankrupt was not insolvent at the time of the filing of said petition as there were no creditors other than moneys owing to the two stockholders who had treated their loans as capital advances.

The various loans or advances were made by the two stockholders, Leo and Myers, over a period of five years until the death of Leo in 1954. The amounts also varied according to the corporate needs. On one occasion a corporate check in the sum of $266 was made payable to Myers, the stub of the check indicating "Balance difference in L & M between Lu and Ed on total in Corp." Myers received this check and treated same as a reduction of the indebtedness and not as a corporate dividend. Following Leo's death both his estate and Myers sued the corporation in the state court for the advances made to it by them. The corporate books treated the advances as loans. Similarly, Leo and Myers handled their records as "loans" or "advances".

■ The contention that the corporate financial picture reveals what is known as a "thin corporation" is untenable. Such might have been the case had simultaneous operating advances been made by the stockholders at the time of capitalization, but it is too late to assert this defense after the death of one of the stockholders when it is apparent that additional stock would not be issued to retire the individual advances. The pattern of handling clearly points to a debtor-creditor relationship between the corporation and the stockholders.

In Leo v. L & M Realty Corporation, supra [228 F.2d 91], Chief Judge Parker, speaking for the majority, had this to say:

"There is nothing in Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, which justifies the subordination or postponement of the independent claims of Leo and Myers to the claim of the bank merely because they were indorsers on paper which the bank held. There is nothing to show that there was any fraud in connection with these claims, that they represented mere capital contributions or that they were anything other than bona fide debts owing by the corporation."

The Circuit Court of Appeals did not have before it the evidence relating to the method of handling the loans or advances, but a review of the transcript leads to the same conclusion as reached by the appellate court. The loans or advances are admittedly bona fide without any semblance of fraud. The Referee correctly determined that these loans did not represent mere capital contributions. Perhaps the parties had in mind that they would eventually issue stock to retire the loans, but they never reached that point and, in the interim, their loans must be accepted as bona fide debts due by the corporation.

■ One final word. There is evidence that Leo gave a false financial statement to one of the banks in procuring a corporate loan endorsed by Leo and Myers. As this was not the bank in which the corporation maintained its account in excess of the amount due the bank, it is urged that a defrauding creditor of the alleged bankrupt is estopped from seeking a preference against a co-creditor under the equitable doctrine applicable in bankruptcy. This is a matter between the bank and Leo. It is not shown that Leo defrauded the corporation. The bank remained a creditor of the corporation until it was paid in full within four months of the filing of the involuntary petition.

The order of the Referee dated September 5, 1956, adjudicating L & M Realty Corporation a bankrupt is affirmed.